IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CYNTHIA NICOLE MCWRIGHT, a natural person.

     Plaintiff,

v.

ADAMS 12 FIVE-STAR SCHOOL DISTRICT,

Defendants.

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

COMES NOW the Plaintiff, Cynthia Nicole McWright, by and through her attorneys, Dietze and Davis, P.C., and for a Verified Complaint and Jury Demand states and avers as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Cynthia Nicole McWright (hereinafter "Ms. McWright"), a natural person, resides at 25954 E. Peakview Pl., Aurora, CO 80016.

2. Upon information and belief, Defendant Adams 12 Five-Star School District (hereinafter the "District"), is located and does business at 1500 E 128th Avenue, Thornton, Colorado 80241.

3. In addition, this action presents a claim under the laws of the United States for which the District Courts of the United States have original jurisdiction pursuant to 28 U.S.C. § 1331, et seq.

4. The District Courts of the United States have supplemental jurisdiction over the State claims made by Plaintiff, which Plaintiff asserts are part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the employment practices herein that Ms. McWright alleges to be unlawful were committed within the jurisdiction of the United States Court for the District of Colorado.

## NATURE OF THE ACTION

6. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including its discriminatory treatment and harassment of Plaintiff due to her race and their unlawful retaliation against her after she complained about unlawful discrimination in the workplace in violation of the Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; and violation of the Colorado Anti-Discrimination Act, C.R.S. 24-34-401 et seq.

## ADMINISTRATIVE PROCEDURES

7. Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and violation of the Colorado Anti-Discrimination Act, C.R.S. 24-34-401 et seq. ("CADA"). Plaintiff's EEOC charge arises out of many of the same facts alleged herein that pertain to her Section 1981 retaliation claim.

8.  Plaintiff received her Notice of Rights, Right to Sue letter from the EEOC on or about September 16, 2020. This Complaint is filed within 90 days of Plaintiff's receipt of her Right to Sue letter from the EEOC.

9.  Any and all other prerequisites to the filing of this suit have been met.

## BACKGROUND

10. On or about August 14, 2014 the District hired Ms. McWright as a teacher.

11. This District is a "employer" within the meaning of 42 U.S.C 2000e and within the meaning of C.R.S. 24-34-401(3).

12. Initially, Ms. McWright taught Eighth Grade Science and Engineering at the District's STEM Launch school.

13. In or around the beginning of the 2018 school year, Ms. McWright transferred from District's STEM Launch school to Thornton High School ("THS") which is also within the District.

14. At THS Ms. McWright taught Biology, Honors Biology, Forensic Science and Physics.

15. Out of approximately 100 teachers at THS, Ms. McWright was the only Black teacher.

16. In or around 2018 Ms. McWright began working with a group of three other THS Science teachers who collaborated with each other on a Professional Learning Committee ("PLC").

17. In addition to Ms. McWright, the PLC consisted of: Ms. Kathleen Fuller, Ms. Krysta Santiago and Mr. Isaac Bond.

18. The PLC's purpose was to allow teachers to collaborate for purposes of supporting student achievement. The PLC typically met two times per week.

19. Ms. Fuller and Ms. Santiago were newly hired by the District on or about August 9, 2018.

20. Ms. McWright was the only Black teacher in the school and, therefore, the only Black teacher on her PLC.

21.  Other teaching subjects had their own PLCs in addition to Ms. McWright's Science PLC.

22. Ms. McWright was the only teacher in her PLC with a Ph.D. and the only Science teacher at THS with a Ph.D.

23. Ms. McWright began experiencing disparate treatment and harassment soon after she began working at THS.    For example, Ms. McWright learned that her fellow PLC teachers, Ms. Fuller, Ms. Santiago and Mr. Bond, were conducting the PLC meetings without her.  When Ms. McWright asked her fellow PLC teachers whether they were going to have a PLC meeting, they sometimes responded "no," but then proceeded to meet without Ms. McWright.

24. In or around March 2019, THS Principal Jennifer Skrobela tasked Ms. McWright and her fellow PLC teachers with restructuring the PLC to address a recent District-wide investigation directed at improving school effectiveness and school culture.

25. Principal Skrobela directed the PLCs to develop rules of practice and "norms" to allow each member of the PLC to "speak their peace."

26. One of the "norms" Ms. McWright's PLC developed was that each member should be allowed to speak their own peace.

27. In consideration of the "norms" her PLC developed, Ms. McWright felt she should "speak her peace" and spoke up about the fact that the three other teachers in her PLC were meeting without her, and that she could not meaningfully participate in her PLC if they excluded her from the PLC meetings.

28.  After Ms. McWright objected to being excluded from the meetings, Ms. Fuller complained to the Department Chair, Mr. Ben Arp, and to the Principal, Ms. Skrobela, about Ms. McWright.

29. Thereafter, the Department Chair, Mr. Arp, informed Ms. McWright that she would no longer be allowed to participate on the PLC.

30.  Mr. Arp alleged that because Ms. McWright was the only Honors teacher in the Science PLC that she did not need to participate in the PLC.

31. Ms. McWright felt discriminated against because after she raised the issue of disparate treatment in her PLC, she was excluded from the PLC altogether.

32. In or around the Spring of 2019, Ms. McWright complained to the Principal Skrobela about the disparate treatment she was experiencing in her PLC.

33. Principal Skrobela stated that Ms. McWright did not need to participate in the PLC because she was an Honors teacher.

34. Other Caucasian Honors teachers were allowed to participate in other department PLCs.

35. Ms. McWright's participation in the PLC was important because the PLC made decisions about things that impacted her job and teaching, including what order of subject matters are taught to students, agendas, issues affecting teachers and students, proficiencies, teacher support and various other matters that directly or indirectly affect a teacher's ability to do their job.

36. In or around the Spring of 2019, shortly after Ms. McWright contacted Principal Skrobela, about the disparate treatment and exclusion from her PLC, Principal Skrobela asked Ms. Wright if she discussed Race in her classroom.

37. Ms. McWright responded to Principal Skrobela's question by stating that if a student asks a question about Race, Ms. McWright will respond.  Principal Skrobela suggested that Ms. McWright should not be discussing Race with her students.

38. Ms. McWright felt that Principal Skrobela's comments were discriminatory and harassing.

39. Ms. McWright rarely discussed Race with her students—and if she did, it was only in response to their inquiries—and she had never been inappropriate when speaking about Race with them.

40. Principal Skrobela also told Ms. McWright that "there are certain schools that won't accept you because you're Black."   Ms. McWright felt Principal Skrobela's comments were discriminatory.

41. In or around April 2019, shortly after Principal Skrobela made her discriminatory comments discussed above about racial acceptance, Ms. McWright received her annual teacher evaluation.

42. During her annual teacher evaluation, Principal Skrobela counseled Ms. McWright on needing to work on "getting along" with her teammates. Ms. McWright had never had an issue with getting along with her co-workers before.

43. Upon information and belief, Principal Skrobela did not counsel the Caucasian teammates about needing to work on getting along with Ms. McWright.

44. During Ms. McWright's annual evaluation, there was no criticism of her teaching skills or proficiency. The only criticism Ms. McWright received was that she needed to "get along" with others.

45. Ms. McWright has never had a problem and does not have a problem "getting along with others."

46. Shortly after receiving her annual teacher evaluation, Ms. McWright began to notice that people were avoiding her, and some of the other teachers did not acknowledge her in the hallways.

47. At the end of the 2018/2019 school year, Ms. McWright and other THS teachers attended a Staff Development Meeting at a local church. The teachers were divided into secondary PLCs, and Ms. McWright was assigned to the Forensic Science PLC which was led by Ms. Jordan White. Ms. White is Caucasian, and it is no secret that Ms. White is a close friend of Ms. Fuller's.

48. When Ms. White learned that Ms. McWright was assigned to her team, she conferred with the Department Chair, Mr. Ben Arp, and Ms. White subsequently sent an email to her team members giving each of the Caucasian team members a unit so that they could plan and prepare a unit planner.  Ms. White excluded Ms. McWright and did not give Ms. McWright a unit to plan.

49. Ms. White told Ms. McWright to "look over the syllabus from last year and get yourself familiar with the folder and content we used." This email is attached hereto as Exhibit 1.

50. As a result, everyone except Ms. McWright had input on the teaching plan for the upcoming year.

51. Ms. White did not speak to Ms. McWright over the entire two-day Staff Development Meeting.

52. Later that summer, fifteen teachers were selected to attend a summer PLC training.

53. Ms. McWright was not selected to the summer PLC training even though she wanted to attend.

54. All of the fifteen teachers selected to attend the summer PLC training were Caucasian.

55. In or around the start of the 2019 school year, Ms. McWright learned that Mr. Isaac Bond was promoted to the position of Dean of Students and Ms. Fuller was promoted to Lead Biology teacher.

56. Ms. McWright was not promoted despite her experience teaching, Master's Degree, and Ph.D.

57. In or around 2019, when Ms. McWright attempted to participate at her PLC meetings, her comments and ideas were shut down. and Ms. Fuller and Ms. Santiago treated Ms. McWright with disdain.

58. During the PLC meetings it became clear to Ms. McWright that Ms. Fuller and her fellow PLC teachers did not want to hear from Ms. McWright and her input was not welcome.

59. As a result, Ms. McWright did not feel welcome at the PLC meetings and did not feel free to give her input or opinions, especially if they were different from the other teachers' opinions.

60. Ms. McWright did not want to be deemed "disagreeable," so she tried to stay quiet during the PLC meetings unless one of her fellow teachers specifically asked for her input.

61. In or around September 2019, Dean Bond attended a PLC meeting as a "proxy for the Principal."  Dean Bond criticized Ms. McWright for "not participating" during the PLC meetings and reprimanded Ms. McWright for allegedly not participating and not sharing her opinions during the PLC meeting.

62. If Ms. McWright spoke up during the PLC meetings, she was reprimanded, and if she did not speak up during the PLC meetings, she was reprimanded. As a result, Ms. McWright felt that she was in a no-win situation.

63. On or about September 10, 2019, Ms. McWright filed a formal complaint of discrimination and hostile work environment with the District's Human Resource office (the "HR Complaint").  The HR Complaint acknowledgment is attached hereto as Exhibit 2.

64. After filing her HR Complaint Ms. McWright spoke to Ms. Sarah Breitner, the District's Employee Relations Administrator.

65. When discussing Ms. McWright's HR Complaint, Ms. Breitner informed Ms. McWright that "it sounds like Race."

66. Ms. Breitner also told Ms. McWright that "we have had so many problems we have hired an outside investigator."

67. Upon information and belief, in or around September 2019 the District hired Mr. Mike Rager to investigate claims of discrimination against the District.

68. Mr. Rager interviewed Ms. McWright in or about September 17, 2019.

69. During the interview with Mr. Rager, Ms. McWright described some of the discrimination and harassment she experienced from Ms. Fuller, Ms. Santiago, Dean Bond, Principal Skrobela and the school's leadership.

70. On about November 19, 2019, Mr. Rager informed Ms. McWright that he could not share his investigative findings with her, but stated that he had some concerns related to Race, but could not prove it.  As a result, he said her claims were unsubstantiated.

71. Mr. Rager further informed Ms. McWright that "the science people knew" Ms. McWright filed a complaint.

72. During one specific PLC meeting in or around the fall of 2019, the teachers were discussing the order of teaching for the next semester.  Ms. McWright expressed her thoughts regarding the order of teaching certain subject matters. Ms. McWright' s opinions were

different than Ms. Fuller's and Ms. Santiago's.  Ms. McWright expressed her thoughts in a professional manner, but accepted the fact that they disagreed.  Ms. Fuller, the PLC Lead, was expressly dismissive of Ms. McWright's input.

73. The PLC included a new biology teacher, Ms. Michelle Salgado. Ms. Salgado agreed with Ms. McWright and said that she thought their proposed order "was chaos."

74. The PLC members voted on subject matter order and the vote was split—2 to 2.

75. In response to the deadlock, Ms. McWright suggested that "we should compromise."

76. In response, Ms. Fuller blew up at Ms. McWright and demanded her chosen curriculum be used because she was the most knowledgeable person about curriculums.

77. On or about January 28, 2020, Ms. McWright met with Principal Skrobela for her mid-year evaluation.  Principal Skrobela told Ms. McWright that the District had completed its investigation into her HR Complaint and that her complaints of discrimination were not substantiated and her discrimination claims and complaint were "resolved."  Principal Skrobela indicated that she did not want to hear further reports of race discrimination.

78. Principal Skrobela, asked Ms. McWright how she was going to "deal" with the HR Complaint's outcome.

79. Ms. McWright felt threatened by Principal Skrobela's question and felt that she was being targeted and retaliated against because she had complained about discrimination.

80. In response, Ms. McWright informed Principal Skrobela that she is being discriminated against, but that she would nonetheless do her job and participate in the PLC meetings.

81. Principal Skrobela responded that Ms. McWright's participation "was not authentic" and alleged that Ms. McWright was "not mentally present" at the PLC meetings.

82. Principal Skrobela told Ms. McWright that determinations would be made about Ms. McWright's job for the next year based on her interactions with the other members of Ms. McWright's PLC.

83. Principal Skrobela also told Ms. McWright that she would probably move Ms. McWright to a different position and remove Ms. McWright from her Honors Biology and Biology teaching, or move her "out altogether."

84. In response, Ms. McWright asked Principal Skrobela what the PLC had to do with her teacher evaluation.

85. Principal Skrobela, told Ms. McWright that she needed to "fix the PLC issue."

86. Principal Skrobela went on and alleged that other teachers had reported things about Ms. McWright's students.

87. Principal Skrobela alleged that some students had complained about Ms. McWright's Honors classes being too difficult.

88. Upon information and belief, other teachers, all Caucasian, whose students have allegedly complained about them were not treated the way Ms. McWright was treated by Principal Skrobela.

89. Ms. McWright believed it was discriminatory and retaliatory for Principal Skrobela to begin her annual teacher evaluation by discussing her discrimination and HR Complaint and suggesting that her advanced classes would be taken away or she would be removed from the school.

90. Ms. McWright's January 28, 2020 mid-year teacher evaluation lasted for over an hour. However, Principal Skrobela informed Ms. McWright that she would have another meeting the following week, on or about February 4, 2020, for a formal evaluation.

91. The official deadline for formal evaluations was on or about Friday, January 31, 2020.

92. Ms. McWright felt that the entire meeting on or about January 28, 2020 was retaliation for filing the HR Complaint of discrimination and a veiled attempted by Principal Skrobela to force Ms. McWright's resignation.

93. On or about February 3, 2020 Ms. McWright emailed Principal Skrobela stating that she did not feel comfortable following their January 28, 2020 mid-year evaluation and felt discriminated against. She further stated that she felt retaliated against for filing the HR Complaint and would be filing a formal charge of discrimination and retaliation with the Equal Employment Opportunity Commission.

94. Principal Skrobela attended a Science PLC meeting in or around March 2020. Following the meeting, Principal Skrobela asked Ms. Selgado if Ms. Selgado noticed that Ms. McWright was being treated differently. Ms. Selgado responded, yes. Earlier in the meeting Ms. Selgado had expressed that she felt the "root" of the PLC's problems was "exclusion."

95. Principal Skrobela never followed up with Ms. Selgado regarding her concerns and comments about Ms. McWright's exclusion from the Science PLC and unfair treatment.

96. In or around April 2020, in conjunction with a meeting involving the District and the THS Union to discuss an upcoming layoff in the department due to a drop in student numbers, Ms. McWright received an email with a Teacher Score Sheet for each of the science teachers at THS.  The Teacher Score Sheet is attached hereto as Exhibit 3.

97. Ms. McWright learned that she was the top-rated science teacher at THS.

98. The Teacher Score Sheet confirmed that Ms. McWright's most recent teacher evaluation rating was "Highly Effective."

99. Due to Ms. McWright's experience, licenses, education/training, and her performance evaluations, Ms. McWright received a rating of 4.75 out of 5.

100. Ms. McWright's rating was higher than any other teacher in the THS science department.

101. In or around May 2020, Ms. McWright received a Google document indicating that Principal Skrobela removed Ms. McWright from teaching Honors Biology and Biology for the upcoming 2020/2021 school year.

102. Principal Skrobela reassigned Ms. McWright to teaching Forensic Science and Physics classes, neither of which were challenging and both of which were considered less-desirable assignments.  Google Document is attached hereto as Exhibit 4.

103. Reassignment from Honors Biology and Biology was considered a significant demotion and detrimental to Ms. McWright's career and progression as a teacher.

104. As a THS teacher Ms. McWright is a member of a union and part of the District 12 Educators' Association.

105. Section 2.1 of the Master Agreement between Board of Education of Adams 12 Five Star School, Adams County and District 12 Educators' Association for the 2019-2020 school year ("Master Agreement") states in part that "Neither the Board nor the Association shall discriminate against any teacher on the basis of race, color, sex, age, religion, creed, national origin, ancestry, genetic information, marital status, sexual orientation, gender identity, disability, or other basis prohibited by applicable law, membership or non-membership or activity in any teacher organization or professional organization, or religious or political activity or lack thereof."

106.     Section 12.1.2 of the Master Agreement states in part that "The term reassignment shall mean a change of assignment in subject area or grade level or both within a single building."

107.     Section 12.3 of the Master Agreement states that "The Board and the Association recognize that some transfer of teachers from one school to another or reassignment within a school is unavoidable.   They also recognize that under normal circumstances administrative transfer or reassignment of personnel will be kept to a minimum."

108.     Section 12.3.1 of the Master Agreement states that "A teacher shall be administratively transferred or reassigned only for valid and sufficient educational reasons. The transfer process will be determined by the Superintendent or his/her designee in consultation with the teacher, DTEA President or his/her designee, and the principal of the proposed receiving school.

109.     There was no valid and sufficient educational reason to reassign Ms. McWright from Honor Biology and Biology to the less rigorous Forensic Science and Physics.

110.     Upon information and belief, Ms. McWright's Honors Biology and Biology classes were reassigned to a Caucasian teacher.

111.     By in or around June 2020 no one from the District had contacted Ms. McWright regarding her reassignment.

112.     At this point, the District's continued and ongoing discrimination against Ms. McWright became so intolerable that Ms. McWright felt compelled to resign.

113.     As part of the District "family," Ms. McWright should have been afforded a work environment free from harassing, discriminatory and retaliatory practices, but as the only Black teacher at THS, she was not.

114.     The District's ongoing discrimination and harassment against Ms. McWright made her job so unbearable that her only choice was to quit.

115.     As a result, in or around June 2020, Ms. McWright felt that she had no other option but to not renew her contract to teach with the District for the 2020-2021 school year.  Ms. McWright informed the District of her decision and the reasons for her decision on or about June 30, 2020.  Resignation Letter is attached hereto as Exhibit 5.

116.     Ms. McWright's Resignation Letter states in part that "As a district that serves black students and other students of color, you must remember, even if a classroom or building is safe from discriminatory practices or institutional racism and you do not follow the rule of "see something say something" you are condoning racism and you have not made the community or world a safe place for historical marginalized students. Remaining silent perpetuates the issue and our students are graduating and entering that environment."

117.     Ms. McWright's Resignation Letter concludes that "It deeply pains me that I must leave the district that I have called home for six years due to discriminatory treatment and retaliation. Your habitual silence perpetuates the historical institutional racism that continues to exist in the Adams 12 Five Star School District and throughout this country. In the future I hope Adams 12 Five Star Schools can do better."

**FIRST CLAIM FOR RELIEF**
**(Discrimination Based on Race- Violation of 42 U.S.C 2000e et seq.)**

118.     Ms. McWright realleges and incorporates by this reference the allegations set forth above inclusive, as though fully set forth herein

119.     Ms. McWright is Black and a member of a protected minority class.

120.     Ms. McWright suffered adverse employment actions including harassment, being denied educational training opportunities, denied promotions, demoted, and reassignment to lower level and less challenging classes, and constructively discharged.

121.     Ms. McWright has a Master's Degree and Ph.D. and is qualified for her position as a teacher at THS. In addition, Ms. McWright had successfully performed her job as a Teacher in the District for six years and was the highest ranked teacher in the Science department.

122.     Regardless of Ms. McWright's qualifications, she was treated less favorably than other teachers at THS not in a protected class and was subject to the above-noted adverse employment actions.

123.     Ms. McWright's race was the determining factor and/or a motivating factor in Defendant's adverse employment actions.

124.     Upon information and belief, Ms. McWright's Honors Biology and Biology classes were reassigned to a Caucasian teacher.

125.     As a result of Defendant's unlawful actions, Ms. McWright has lost wages and other benefits; Ms. McWright has sustained economic damages and injuries and emotional injuries, humiliation, embarrassment, depression, and loss of enjoyment of life; she has suffered other non-pecuniary losses, resulting in damages in an amount to be proven at trial.

126.     Ms. McWright is entitled to her reasonable attorneys' fees and costs of suit.

127.     Wherefore, Ms. McWright has been damaged in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**(Retaliation- In Violation of 42 USC 2000e-3(a))**

128.     Ms. McWright realleges and incorporates by this reference the allegations set

forth above inclusive, as though fully set forth herein.

129.     Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits

employers from discriminating against an employee "because [she] has opposed any

practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-

3(a).

130.     Ms. McWright engaged in protected activity by making numerous complaints to

Defendant, its agents and employees about Defendant's discriminatory employment

practices.

131.     Ms. McWright, is Black and member of a protected class, engaged in protected

activity by complaining about discrimination on numerous occasions before and after she

filed the HR Complaint and by filing the HR Complaint.

132.     As a result of Ms. McWright's complaints, Defendant, its agents and employees,

took material adverse action against Ms. McWright by denying her educational training

opportunities and promotions, ongoing harassment based on her race and her discussions

about race, claiming that her more challenging classes would be reassigned or she would

be removed from THS, and by demoting her and reassigning her lower level and less

challenging classes.

133.     Defendant, its agents and employee's retaliatory actions would deter a reasonable

employee from engaging in protected activity under Title VII.

134.     There is a causal connection between the adverse actions that Defendant took

against Ms. McWright and her exercise of federally protected rights.

135.     As a result of Defendant's unlawful actions, Ms. McWright has lost wages and

other benefits; Ms. McWright has sustained economic damages and injuries and

emotional injuries, humiliation, embarrassment, depression, and loss of enjoyment of life;

she has suffered other non-pecuniary losses, resulting in damages in an amount to be

proven at trial.

136.     Ms. McWright is entitled to her reasonable attorneys' fees and costs of suit.

137.     Wherefore, Ms. McWright has been damaged in an amount to be determined at

trial.

### THIRD CLAIM FOR RELIEF
### (Discrimination Based on Race -Violation of Colorado Anti-Discrimination Act)

138.     Ms. McWright realleges and incorporates by this reference the allegations set

forth above inclusive, as though fully set forth herein.

139.     Ms. McWright is Black and a member of a protected minority class.

140.     Ms. McWright suffered adverse employment actions including being denied

educational training opportunities, subjected to harassment, denied promotions, demoted,

and reassignment to lower level and less challenging classes, and constructively

discharged.

141.     Ms. McWright has a Master's Degree and Ph.D. and is qualified for her position

as a teacher at THS. In addition, Ms. McWright had successfully performed her job as a

Teacher in the District for six years and was the highest ranked teacher in the Science

department.

142.     Regardless of Ms. McWright's qualifications, she was treated less favorably than

other teachers at THS not in a protected class and was subject to the above-noted adverse

employment actions.

143.    Ms. McWright's race was the determining factor and/or a motivating factor in Defendant's adverse employment actions.

144.    Upon information and belief, Ms. McWright's Honors Biology and Biology classes were reassigned to a Caucasian teacher.

145.    As a result of Defendant's unlawful actions, Ms. McWright has lost wages and other benefits; Ms. McWright has sustained economic damages and injuries and emotional injuries, humiliation, embarrassment, depression, and loss of enjoyment of life; she has suffered other non-pecuniary losses, resulting in damages in an amount to be proven at trial.

146.    Ms. McWright is entitled to her reasonable attorneys' fees and costs of suit.

147.    Wherefore, Ms. McWright has been damaged in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (Retaliation- In Violation of Colorado Anti-Discrimination Act)

148.    Ms. McWright realleges and incorporates by this reference the allegations set forth above inclusive, as though fully set forth herein.

149.    Ms. McWright engaged in protected activity by making numerous complaints to Defendant, its agents and employees about Defendant's discriminatory employment practices.

150.    Ms. McWright, is Black and member of a protected class, engaged in protected activity by complaining about discrimination on numerous occasions before and after she filed the HR Complaint and by filing the HR Complaint.

151.    As a result of Ms. McWright's complaints, Defendant, its agents and employees, took material adverse action against Ms. McWright by denying her educational training

opportunities and promotions, subjecting her to harassment, claiming that her more challenging classes would be reassign or she would be removed from THS, and by demoting her and reassigning her lower level and less challenging classes.

152.     Defendant, its agents and employee's retaliatory actions would deter a reasonable employee from engaging in protected activity under CADA.

153.     There is a causal connection between the adverse actions that Defendant took against Ms. McWright and her exercise of federally protected rights.

154.     As a result of Defendant's unlawful actions, Ms. McWright has lost wages and other benefits; Ms. McWright has sustained economic damages and injuries and emotional injuries, humiliation, embarrassment, depression, and loss of enjoyment of life; she has suffered other non-pecuniary losses, resulting in damages in an amount to be proven at trial.

155.     Ms. McWright is entitled to her reasonable attorneys' fees and costs of suit.

156.     Wherefore, Ms. McWright has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff, Cynthia Nicole McWright, respectfully requests the entry of judgment in her favor and against Defendants in an amount to be determined at trial, including actual, compensatory and consequential damages, economic and non-economic damages, statutory damages including attorney's fees and costs incurred in pursuing this matter, pre- and post-judgment interest and for such other relief as this Court deems appropriate.  Plaintiff demands a trial by jury.

## **JURY DEMAND**

Plaintiff, Cynthia Nicole McWright demands a trial by jury on all issues.

Dated this 11th day of December 2020.

Respectfully Submitted,

By: *s/ Jennifer L. Lorenz*
Jennifer L. Lorenz, #38549
Dietze and Davis, P.C.
2060 Broadway, Suite 400
Boulder, CO  80302
Telephone:  303-447-1375

*Attorney for Plaintiff*

Plaintiff's Address:

25954 E. Peakview Pl.
Aurora, CO 80016